## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**STEVEN V. WARREN**                                              **PLAINTIFF**

**v.**                                **No. 3:20-cv-79-DPM**

**GERALD GOZA, Police Chief,
City of Egypt, Individually and in
his Official Capacity;  CITY OF
EGYPT;  JERRY COOK, Mayor,
Individually and in his Official
Capacity;    and   VELVA   JOY
LINGO, Clerk/Record for City of
Egypt, Individually and in her
Official Capacity**                        **DEFENDANTS**

### AMENDED ORDER

1.      The many claims in this case arise from encounters between a citizen and some city officials in Egypt, Arkansas, a small town a few miles southwest of Jonesboro.  Steven Warren is a long-time resident and former seasonal employee of Egypt.  Warren grew concerned about allegations that Egypt was operating a speed trap.  He began looking into city officials' backgrounds, making Freedom of Information Act requests, attending city council meetings, and posting on social media about city officials and their interactions with him.  He was fired in 2019.  He began to question the credentials of the Egypt chief of police, Gerald Goza.  Warren learned that Chief Goza had been fired from police departments in neighboring towns before Egypt's mayor, Jerry

Cook, hired Goza in 2017.  Warren says that Chief Goza, Mayor Cook, and the city clerk, Velva "Joy" Lingo, conspired to prevent him from presenting his findings to the city council.  He also contends that they retaliated against him—by having him arrested twice and by filing orders of protection against him.  He faults Egypt for having poor policies, providing inadequate training, and exercising inadequate oversight.  He has sued these three city officials, as well as Egypt itself. Appendix A lists Warren's many federal and state claims by defendant, as well as the Court's rulings on the motion for summary judgment by the officials and Egypt.

With one caveat, where some genuine dispute of material fact exists, the Court has taken the record in the light most favorable to Warren.  *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).  The caveat: This record contains several videos of Warren's encounters with Chief Goza, Clerk Lingo, and a deputy sheriff, whom Warren has not sued. When testimony by affidavit or deposition blatantly contradicts a video, the Court has accepted what the video shows as the truth about what happened.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**2.**    Some threshold points.  Egypt and its officials prevail on Warren's Fifth Amendment, Eighth Amendment, and official capacity claims.  The Fifth Amendment claims fail to state a claim because Warren hasn't named any federal defendants or alleged any federal action.  *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019).  Warren wasn't

a convicted prisoner, so his Eighth Amendment claim must be analyzed under the Fourteenth Amendment.  This distinction is for precision; these constitutional provisions offer Warren the same protection in the circumstances presented.  *Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001).  Precedent in this circuit is clear that strip searches and cavity searches are constitutional.  *Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015).  His substantive due process claims therefore fail as a matter of law.  Warren's official capacity claims against Chief Goza, Mayor Cook, and Clerk Lingo duplicate his claims against the city of Egypt.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  These duplicative claims will be dismissed without prejudice.

3.     All the false arrest claims turn on whether Chief Goza had arguable probable cause to arrest Warren.  If it existed, Chief Goza is entitled to qualified immunity for the arrests.  *Brown v. City of St. Louis*, 40 F.4th 895, 901 (8th Cir. 2022).  Even if Chief Goza was operating under a mistaken belief that Warren had committed a criminal offense, he remains entitled to qualified immunity if his mistake was objectively reasonable in the circumstances at the time of the arrests.  *Quraishi v. St. Charles County*, 986 F.3d 831, 836 (8th Cir. 2021).  Whether arguable probable cause existed is a question of law.  *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017).

**The 13 August 2019 Arrest.**  The day before and the morning of his first arrest, Warren submitted several written FOIA requests to

Clerk Lingo.   Among other things, Warren sought documents from Chief Goza's personnel file, including copies of "preemployment records" and any complaints by town citizens made against him. *Doc. 24–8 & 24–13.* He followed up in person at city hall, making additional oral requests to Clerk Lingo to review public records.

Warren and Clerk Lingo dispute the nature of their encounter. But the videos show much of what happened that morning.   They record that Warren and Clerk Lingo disagreed about whether Warren had the right to review immediately any available records covered by his FOIA requests.   Warren settled in at a table in the city hall lobby, unpacking his computer, water bottle, and other items.   His voice was raised, but Warren remained respectful and minded his manners, never failing to say "please" and "thank you, ma'am" when appropriate.   He never got unruly.   Warren was vexed by Clerk Lingo's responses to his requests.   He became a bit agitated.   Clerk Lingo was patient and calm at first.   She knew Warren well.   And she knew he had hearing difficulties.   As the encounter continued, though, she grew weary of dealing with Warren.   She retreated to her office and closed the door.

Unsure how to handle the situation, Clerk Lingo made four calls: (1) to the city attorney;  (2) to Mayor Cook;  (3) to Chief Goza, who did not answer; and (4) to 911.   It was approximately fifteen minutes after Warren arrived at city hall, asking to inspect the records, that Clerk Lingo called 911.   She told the dispatcher that she was alone at city hall

–4–

and that there was a white male "causing a scene and refusing to leave." *Doc. 24–21*. The dispatcher notified Chief Goza, who then called Lingo to tell her he was on his way. Chief Goza also knew Warren well.

Craighead County Deputy Sheriff Jerry Roth was closer than Chief Goza to city hall and got there first. He spoke briefly with Clerk Lingo in her office, and then returned to the main room. He asked Warren about his FOIA requests. Chief Goza arrived at city hall as Deputy Roth and Warren were speaking. Goza accused Warren of having raised his voice at Clerk Lingo. Warren replied that he had the encounter "on tape," and he told Chief Goza that if he had raised his voice, it was due to his impaired hearing. Deputy Roth asked Warren why he needed the FOIA information he'd requested, but Warren refused to tell him. Chief Goza told Deputy Roth: "We've been having trouble with [Warren] . . . and the mayor's wanting him arrested because he has been threatening her." At that time, Lingo approached. She and Chief Goza went to her office to speak, while Warren and Deputy Roth remained in the lobby area. When Chief Goza returned, he immediately arrested Warren for disorderly conduct and escorted him out of city hall.

Chief Goza's subjective reason for arresting Warren makes no legal difference. *Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004). He is entitled to qualified immunity if he can demonstrate that arguable probable cause existed to arrest Warren for any criminal offense. *Ibid.*

Chief Goza argues that he had arguable probable cause to arrest Warren for disorderly conduct, obstructing governmental operations, or harassment.

Chief Goza testified on deposition that he arrested Warren for disorderly conduct after he observed Warren "screaming" loudly enough to be heard outside and "bumping up . . . in a threatening manner, blowing up, and bouncing around," to a degree that the police "couldn't get him to calm down to talk" to them. *Doc. 24–23 at 19*. The video footage contradicts this version of events. Warren remained seated throughout the encounter with the officers. His voice was raised, but the volume wasn't unreasonable. To be sure, Warren was clearly agitated with the way events were unfolding. But his behavior was not disruptive enough either to violate Arkansas' disorderly conduct statute or to cause a reasonable officer to conclude that he might have violated the statute. ARK. CODE ANN. § 5-71-207; *M.J. v. State*, 2011 Ark. App. 171, 381 S.W.3d 880 (2011); *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 983–84 (8th Cir. 2019). Public servants must be patient with everyone they encounter, especially with those such as Warren who try that patience. On this record, Chief Goza did not have arguable probable cause to arrest Warren for disorderly conduct.

The videos also undermine Chief Goza's contention that he had arguable probable cause to arrest Warren for obstructing governmental operations. ARK. CODE ANN. § 5-54-102. Warren didn't obstruct the

officers' ability to question him.  One video shows that when Deputy Roth asked him who he was, Warren replied that he was a citizen making a FOIA request.  Deputy Roth did not press the issue.  By the time the Deputy had finished talking to Clerk Lingo, he knew Warren's identity.  After that, Warren answered Deputy Roth's questions about why he was at city hall.  At one point, Warren told Roth he did not want to have any further conversation.  But, Warren continued answering the Deputy's questions even after he said he didn't want to do so.  *Doc. 24–16 at 7:48–8:55.*  On this record, Chief Goza hasn't established that he or Deputy Roth witnessed any behavior by Warren that would provide arguable probable cause to support an arrest for obstructing governmental operations.

The last potentially applicable crime is harassment.  ARK. CODE ANN. § 5-71-208.  "A person commits the crime of harassment if, with purpose to harass, annoy, or alarm another person, without good cause, he or she . . ." takes any of various listed actions.  ARK. CODE ANN. § 5-71-208(a).  The provision most applicable here forbids conduct "that alarms or seriously annoys another person and that serves no legitimate purpose."  ARK. CODE ANN. § 5-71-208(a)(5).

After Chief Goza arrived at city hall, he spoke briefly with Clerk Lingo, didn't consult with Deputy Roth, and didn't ask Warren any questions at all.  Whether Goza could have reasonably believed Warren's conduct was intended to alarm or seriously annoy Lingo

–7–

hinges on what a reasonable police officer would have perceived when speaking to her and taking the whole situation in.   And there are material facts in genuine dispute about all those things.

The videos are not dispositive—because they don't show everything that happened.   Most importantly, they do not show Clerk Lingo inside her office, where she spent some time on the phone, including with Chief Goza.   And the Court must consider the situation from a responding officer's perspective.   First, Chief Goza received a call from the 911 dispatcher.   The "dispatch call detail" document refers to an "unwanted guest" call describing a white male "causing a scene and refusing to leave." *Doc. 24–21.*   Chief Goza then called Clerk Lingo. He testified on deposition that he let Lingo know that a deputy sheriff was on his way, but "didn't hold a full conversation with her." *Doc. 24–23 at 18–19.*

What Lingo said to the officers, and how she appeared to them, is disputed.   On the one hand, Chief Goza testified that Lingo was crying and acting "terrified." *Ibid.*   She testified that she was crying when she spoke with both Deputy Roth and Chief Goza at the scene. *Doc. 24–6 at 10.*   If the police officers perceived such great alarm coming from Lingo, the case for arguable probable cause is stronger.   On the other hand, the videos show no crying or terror.   Clerk Lingo does not appear to have been crying when Chief Goza's call came through to her cell phone, *Doc. 24–22 at 1:30*, when she and Deputy Roth emerged from her office,

*Doc. 24–16 at 6:50,* or when she and Chief Goza entered her office to speak just before the arrest, *Doc. 24–16 at 8:25.* The videos could support a finding that Lingo was neither crying nor terrified when she spoke to police. *United States v. Hirani,* 824 F.3d 741, 747 (8th Cir. 2016). What Lingo said to the officers, how she said it, and how she appeared, will determine whether a reasonable officer would have had arguable probable cause to arrest Warren for harassment on August 13th.

**The 22 August 2019 Arrest.** Several days later, Chief Goza arrested Warren again for disorderly conduct. The parties' versions of this encounter vary considerably. There is no video. Chief Goza argues that he had arguable probable cause on August 22nd to arrest Warren for either disorderly conduct or assault.

Warren approached Chief Goza as he sat in his patrol car on the street. According to Goza, Warren flung open his car door, threw paper into the car, and then yelled and cursed at Chief Goza so loudly that a neighbor across the street sent her children inside. *Doc. 24–23 at 21.* Warren testified, however, that he never raised his voice and never cursed. He said he tried to leave throughout their encounter, but Chief Goza kept following him. *Doc. 24–1 at 34.* Here, too, the jury must answer the disputed fact questions before the Court can decide whether the arrest for disorderly conduct was supported by arguable probable cause.

Whether arguable probable cause existed for assault depends on what happened after Warren approached the patrol car.  Again, Chief Goza says Warren opened the car door and forcefully threw paper on him.  Warren responds that Chief Goza opened the car door to speak to him, and then Warren tried to hand him a piece of paper.  *Doc. 24–1 at 24.*  According to Warren, Goza refused to accept it, so Warren let the paper flutter to Goza's lap.  What happened with the piece of paper is another genuinely disputed material fact that must be resolved at trial.  The false arrest claim about the August 22nd arrest goes forward.

**4.**    Egypt argues that Warren's claims against it should be dismissed because Warren has failed to point to a policy or custom that was the moving force behind his alleged constitutional violations. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).  Warren responds first that the city had a custom of letting its officers do whatever they pleased.  But a municipality cannot be held liable for merely failing to implement a policy that limits its officers' discretion, even if the policy would have prevented the officers' unconstitutional acts.  *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013).  Warren also faults the city for its failure to train Chief Goza in handling minor offenses or evaluating probable cause.  This is not a pleaded claim.  In any event, Warren has not provided evidence sufficient to support a verdict that Egypt had notice of a pattern of conduct—that Chief Goza routinely arrested people without having

arguable probable cause. *Ibid*. Finally, Warren implies that Mayor Cook knew that Chief Goza was violating social security laws by working for the city. That issue is not a solid basis for any stand-alone claim against the city in this case. Egypt is entitled to summary judgment on Warren's claims.

5. Warren made no response to the city officials' motion for summary judgment on his malicious prosecution claim. He therefore waived his right to respond on that point. *Satcher v. University of Arkansas at Pine Bluff Board of Trustees*, 558 F.3d 731, 734–35 (8th Cir. 2009). It is not the Court's place to search the record looking for factual disputes. *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). But, the Court has studied the videos to address other claims, and they create jury issues here, too.

Did the city officials have arguable probable cause to pursue any of the charges? *Wal-Mart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 348, 681 S.W.2d 359, 361 (1984). That's the dispositive question on the malicious prosecution claims. Arkansas law is concerned with the facts known before the action commenced. *Sundeen v. Kroger*, 355 Ark. 138, 145, 133 S.W.3d 393, 397 (2003). And a lack of probable cause can allow an inference of malice. *Cordes v. Outdoors Living Center Inc.*, 301 Ark. 26, 31, 781 S.W.2d 31, 33 (1989). Chief Goza lacked arguable probable cause to arrest Warren for either disorderly conduct or obstructing governmental operations, and the videos create questions of material

fact about whether a reasonable officer would have had arguable probable cause to arrest him for harassment.  So, the malicious prosecution claims go forward to trial.

A final point about malicious prosecution.  The city officials argue that ARK. CODE ANN. § 21-9-301, which provides tort immunity for municipalities and municipal employees, extends to these claims and therefore shields them from liability.  This statute, though, provides immunity to municipal employees against suit in their official capacities.  *Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315 (1985).  Here, Warren's malicious prosecution claims are against Chief Goza, Mayor Cook, and Clerk Lingo in their individual capacities.  This immunity statute therefore does not apply.

**6.**     Warren also brings claims for abuse of process. This tort has three elements. Chief Goza and Clerk Lingo must have set in motion a legal procedure. They must have perverted the procedure to accomplish an ulterior purpose for which it was not designed.  And there must have been some willful act in using the legal process that was improper.  *National Bank of Arkansas v. River Crossing Partners, LLC*, 2011 Ark. 475, 11, 385 S.W.3d 754, 761 (2011).  Arkansas law defines "ulterior purpose" narrowly—the judicial process must have been used to extort or coerce.  *Union National Bank of Little Rock v. Kutait*, 312 Ark. 14, 19, 846 S.W.2d 652, 655 (1993).

Warren's claim here is about a no-contact order that was issued approximately two weeks after his second arrest and in connection with Clerk Lingo pursuing a criminal complaint of harassment under ARK. CODE ANN. § 5-71-208.  Warren says the no-contact order was issued *ex parte*.  He says that he was not served with the order for several weeks after it was issued, despite Chief Goza having the order and the related summons in hand all that time.  He also says that the order was served on the day of a city council meeting to prevent his attendance.

Chief Goza and Clerk Lingo seek summary judgment on this claim with a "no harm, no foul" response.  They point out that Warren and his lawyer were able appear in district court and get the order modified.  They also say that the order did not actually chill Warren's First Amendment rights, because he continued to submit FOIA requests to the city even after the order was issued.  These arguments are insufficient, though, to eliminate Warren's claim.  The Arkansas statute on point contemplates notice when a no-contact order is issued in connection with a harassment charge:  "Upon pretrial release of the defendant, a judicial officer shall enter a no contact order in writing . . . and shall give notice to the defendant of penalties contained in Rule 9.5 of the Arkansas Rules of Criminal Procedure."  ARK. CODE ANN. § 5-71-208(d)(1).  Even assuming some flexibility on notice when a summons rather than a warrant is issued, the delay in service, and the belated service of the order on the day of a city council meeting, could support

a verdict that the order was secured to stop uncomfortable speech and criticism by Warren at a public meeting, rather than to stop harassment. The jury must decide what Chief Goza and Clerk Lingo's motivations were and whether they abused the legal process.

7.      The Egypt officials argue that Warren's federal and state retaliation claims fail if arguable probable cause existed for the arrests. This is correct on the law.  But, the argument does not succeed given the Court's rulings about arguable probable cause.  The city officials further contend that Warren has not presented evidence that they conspired to have him arrested.   But sufficient evidence exists to support a verdict on this part of his retaliation claims.  Warren testified that, on 31 July 2019, approximately two weeks before his first arrest, he told Mayor Cook that he intended to present incriminating information about Chief Goza's history and qualifications to the city council.  *Doc. 24–1 at 10.*  Mayor Cook allegedly responded that his employment decisions were none of Warren's business, and none of the city council's business, either.  A city council meeting was scheduled for the evening of August 13th, the day Warren got arrested at city hall. That morning, Warren had requested Chief Goza's personnel file (among other things) from Clerk Lingo.  She then called Mayor Cook and Chief Goza before she called 911.  And, just prior to Warren's arrest, Chief Goza told Deputy Roth that the mayor wanted Warren arrested.

The First Amendment protects every citizen's right to criticize public officials. *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017). This is a core right in our free country. Being arrested, twice, and then being served with a criminal summons and a no-contact order, "would chill a person of ordinary firmness from exercising" his First Amendment rights in the future. 869 F.3d at 657. The jury must decide whether Warren has proved a causal connection between the city officials' alleged retaliatory animus and the adverse actions that occurred. *Ibid.*

**8.** Warren makes defamation claims against Chief Goza, Mayor Cook, and Clerk Lingo. To prove defamation under Arkansas law, Warren must show that each city official published or communicated a defamatory statement of fact about him and that he suffered resulting damages. *Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 568, 954 S.W.2d 914, 918 (1997).

First, Warren says Mayor Cook and Clerk Lingo made knowingly false statements in the affidavits they filed in support of their petitions for no-contact orders. *Docs. 24–26, 32–6 & 32–7.* (More on these petitions in a moment). Mayor Cook is entitled to summary judgment here because his affidavit does not contain a statement that "impl[ies] an assertion of an objective verifiable fact." *Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 956, 69 S.W.3d 393, 402–03 (2002). Clerk Lingo argues that Warren cannot prove that her

statements were knowingly false.  But her affidavits contain key facts that are genuinely disputed.  After considering the whole record, a jury could reasonably find a knowing falsehood here.

Second, Warren alleges that Chief Goza, Mayor Cook, and Clerk Lingo made defamatory statements by warning folks in Egypt to keep their distance from him because he was schizophrenic and posed a danger to the community.  The city officials respond that Warren hasn't offered any evidence that he was actually damaged as a result of these alleged statements.  But Warren only needs to show slight harm. *Northport Health Services, Inc. v. Owens*, 356 Ark. 630, 642, 158 S.W.3d 164, 172 (2004).  Warren and his wife submitted affidavits in opposition to summary judgment.  They say that the officials' knowingly false statements caused Warren and his family considerable stress, anxiety, and fear for their safety. *Doc. 32–1 at 13–14 & 32–2 at 2.*  That's enough proof for now.  Warren's defamation claims against the officials go forward.

**9.** Warren's procedural due process claims survive, too.  After Warren's second arrest, Clerk Lingo and Mayor Cook both sought no-contact orders against Warren in circuit court. *Docs. 32–6 & 32–7.*  That court denied their petitions because they were not family members or household members entitled to seek such an order by statute.  ARK. CODE ANN. § 9-15-201.  The next day, Chief Goza escorted Clerk Lingo to district court, where she filled out an affidavit of arrest accusing

Warren of harassment, *Doc. 24–26*, in violation of ARK. CODE ANN. § 5-71-208.   Based on that affidavit, the district court issued a criminal summons and a no-contact order to serve on Warren, and gave both to Chief Goza. *Doc. 32–5.* The order put three limits on Warren: He could not come within one hundred yards of Clerk Lingo, including at her workplace at city hall; he could not possess weapons or firearms; and he could not drink alcohol.   The record here does not show that Warren received a hearing on the no-contact order until two months later, when Warren's lawyer appeared and had the order modified to allow Warren to attend city council meetings. *Doc. 24–27.*

As discussed above, Arkansas' harassment statute authorizes no-contact orders.   ARK. CODE ANN. § 5-71-208(d)(1).   Rule 9.5, in turn, describes penalties for violating those orders. ARK. R. CRIM. P. 9.5.   But Warren's case presents some peculiar factual circumstances that keep his claims alive for trial.

There is no record evidence to indicate that Warren attended any hearing or other formal proceeding at which he received the no-contact order.   The district court's decision to issue a summons, rather than an arrest warrant, indicates that the court did not view the circumstances as serious enough to justify custody. ARK. R. CRIM. P. 6.1.   In addition, the statute and the Rules required that Warren be given notice of the order, the summons, and Clerk Lingo's complaint against him.   ARK. CODE ANN. § 5-71-208(d)(1);   ARK. R. CRIM. P. 6.2 & 9.4.   That, of course,

–17–

could have been done in open court, had a hearing been held. It could also be done by service of all those papers on Warren. That task was entrusted to Chief Goza. According to Warren, Goza did not serve the no-contact order on him until one month after it was issued. *Doc. 24–1 at 17–18.* This Court can and does take judicial notice of the district court's docket, which is a public record. *Roe v. Nebraska*, 861 F.3d 785, 788 (8th Cir. 2017). That docket contains a proof of service reflecting that Chief Goza served the summons on Warren. *State v. Warren*, Case No. JOSEG 19-194, 28 October 2019 Entry. The proof of service does not indicate when service occurred, but it must have happened before October 28th, which was the filing date. The no-contact order is attached to the return of service, but it is unsigned. In addition to the unsigned order, the paperwork is silent as to whether Chief Goza served Clerk Lingo's complaint on Warren. The docket does record service of the amended no-contact order, which was entered after a hearing in November.

The Egypt officials seek summary judgment on Warren's due process claims. They argue that because Warren and his attorney were present for the eventual hearing on the no-contact order, it was not actually issued *ex parte*. The Court is not persuaded. Due process requires that, with some exceptions, before a liberty is lost, a person receive notice of the allegations against him and the opportunity to meet them. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). The original

no-contact order implicated Warren's significant liberty interests, and it is unclear on this record whether Warren received timely, adequate notice of that order or had any meaningful opportunity to challenge it before the November hearing.  Summary judgment is denied on these claims.

**10.**    Chief Goza is entitled to qualified immunity, and therefore summary judgment, on Warren's federal and state claims of excessive force.  Regarding the August 13th arrest, Warren claims only that Chief Goza used too much force in handcuffing him.  *Doc. 33 at 24–25.*  The video undermines this claim.  It shows that Chief Goza asked Warren to get up from his chair several times.  *Doc. 24–24 at 0:00–0:30.*  Warren initially ignored those requests and remained seated.  When Chief Goza tried to handcuff Warren, Warren flinched and shifted his body away.  Warren's actions could reasonably be construed as resistance.  And, in any event, the video does not show Chief Goza doing anything more than grabbing Warren's wrists to handcuff him. This was a permissible use of force in the circumstances.  *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014).  On this record, no reasonable juror could conclude that Chief Goza used excessive force in making the August 13th arrest.

The same conclusion holds for Warren's excessive force claim arising out of his August 22nd arrest.  Here again, Warren's claim is solely about how he was handcuffed.  Warren acknowledges, however,

that the force used during this arrest was even less than Chief Goza used on August 13th.  Plus, Warren has not alleged that he sustained any permanent injury, or sought any treatment for an injury, resulting from either of these arrests.

Warren's excessive force claims fail as a matter of law.  *Foster v. Metropolitan Airports Commission*, 914 F.2d 1076, 1082 (8th Cir. 1990).

11.    The next issues involve Warren's claims for battery and assault.  In Arkansas, battery is "any unlawful touching of the person of another."  *Swindle v. Thorton*, 229 Ark. 437, 440, 316 S.W.2d 202, 203 (1958).   One commits an assault if he acts to create a reasonable apprehension of immediate battery.  *Mann v. Pierce*, 2016 Ark. 418, 7, 505 S.W.3d 150, 154 (2016).  Warren says that Chief Goza battered and assaulted him when he arrested him twice without probable cause and placed him in handcuffs each time.   Chief Goza responds that no unlawful touching occurred on either occasion because an officer may exert as much physical force as necessary to overcome the resistance he encounters in making an arrest.  *Crouch v. Richards*, 212 Ark. 980, 982, 208 S.W.2d 460, 462 (1948).  But, whether Chief Goza's touching was unlawful depends on whether he had arguable probable cause to make the arrests.   On the current record, however, he did not have that supporting foundation on either disorderly conduct or obstructing governmental operations, and genuine factual disputes exist on harassment.

Warren also says that Mayor Cook and Clerk Lingo are liable for battery and assault based on Goza's alleged unlawful touching. Arkansas recognizes joint and several liability for those who aid and abet another in committing either of those torts. *Hargis v. Horrine*, 230 Ark. 502, 503, 323 S.W.2d 917, 917 (1959). A third party who encourages or incites the tortious conduct by words, gestures, looks, or other signs can satisfy the aiding and abetting requirement. *Costner v. Adams*, 82 Ark. App. 148, 156, 121 S.W.3d 164, 170 (2003). And Arkansas statutory law recognizes joint and several liability for battery and assault when parties act in concert, sharing a conscious agreement to pursue a common plan or design to commit the tort. ARK. CODE ANN. § 16-55-205. Here, questions of fact exist about the conversations between Mayor Cook, Clerk Lingo, and Chief Goza. Until those questions are answered at a trial, Warren's battery and assault claims against Mayor Cook and Clerk Lingo proceed.

12. Clerk Lingo and the city are entitled to summary judgment on Warren's failure to accommodate claim under the Americans with Disabilities Act. Warren says they denied him meaningful access to the city records by refusing to accommodate his dyslexia. He points out, and the video confirms, that Warren told Clerk Lingo at city hall that he is hard of hearing and dyslexic. She already knew he was hard of hearing. Instead of allowing Warren to make a verbal request for records, Clerk Lingo asked Warren to write his request down and

handed him a pen and a pad.  Warren says this was insufficient and violated the ADA by denying him the opportunity to communicate effectively.

While Warren is correct that Arkansas' Freedom of Information Act does not require a written request, ARK. CODE ANN. § 25-19-105(a)(2)(A)(B), he makes no FOIA claim.  And his ADA claim fails on the record as a whole.  Warren had submitted eight written FOIA requests by email in the twenty-four hours before he arrived at city hall.  He also acknowledges that he communicated with city officials using text messages.  *Doc. 24–1*.  Also, only a few minutes elapsed between Lingo telling Warren to write down his requests and the police officers arriving at city hall.  There was no time for the good faith back and forth that is contemplated by the ADA.  If Warren had tried to write out his request and failed, and Clerk Lingo had refused to hear what records he wanted to see, then Warren might have a solid ADA claim.  In the circumstances, though, no reasonable juror could conclude that there was a failure to accommodate.

In his papers responding to the motion for summary judgment, Warren appears to be asserting a new ADA claim—retaliation.  He did not plead this claim.  *Doc. 1 at 20–21*.  And he cannot amend his pleading in his summary judgment briefing.  *Northern States Power Co. v. Federal Transit Administration*, 358 F.3d 1050, 1056–57 (8th Cir. 2004).

–22–

**13.**   Warren's outrage claim also fails.  Arkansas disfavors this tort and views it narrowly.  *Crockett v. Essex*, 341 Ark. 558, 564, 19 S.W.3d 585, 589 (2000).  The law requires extreme and outrageous conduct beyond all bounds of decency.  *Faulkner*, 347 Ark. at 957, 69 S.W.3d at 403–04.  Warren says that the strip searches and body-cavity searches he endured meet this high threshold.  While of course these searches were intrusive, and offended Warren, they are a routine part of jail administrative procedures and do not exceed all bounds of decency.  Nor has Warren shown that he suffered emotional distress so severe that no reasonable person could be expected to endure it.  *Ibid*.

*   *   *

Motion for summary judgment, *Doc. 22*, partly granted and partly denied.  *See* Appendix A for specifics.  Much of this case needs a trial.  The Court of Appeals has outlined the applicable procedure for resolving disputed material facts before a qualified immunity defense can be definitively addressed.  *Littrell v. Franklin*, 388 F3d 578, 584–85 (8th Cir. 2004).  This Court has followed this procedure in *Cole v. Hutchins*, No. 4:17-cv-553-DPM, and *Tanner v. Ziegenhorn*, No. 4:17-cv-780-DPM.  Counsel should consult those dockets.  *See Doc. 72, 135 & 142* in *Cole* and *Doc. 97 & 142* in *Tanner*.

So Ordered.

_WPMarshall Jr._

D.P. Marshall Jr.
United States District Judge

3 October 2022

## Appendix A

**Gerald Goza**

| Federal Claims* | Disposition |
|---|---|
| First Amendment– Retaliation | Proceeds |
| Fourth Amendment– False Arrest (August 13th & 22nd) | Proceeds |
| Fourth Amendment– Excessive Force (August 13th & 22nd) | Dismissed with prejudice |
| Fifth Amendment | Dismissed without prejudice |
| Eighth Amendment | Dismissed with prejudice |
| Fourteenth Amendment– Procedural Due Process | Proceeds |
| Fourteenth Amendment– Substantive Due Process | Dismissed with prejudice |
| Official Capacity Claims | Dismissed without prejudice |

*Each echoing state law claim proceeds, or fails, like each federal claim.

| Stand-alone Arkansas Law Claims | Disposition |
|---|---|
| Defamation | Proceeds |
| Assault & Battery (August 13th & 22nd) | Proceeds |
| Malicious Prosecution | Proceeds |
| Abuse of Process | Proceeds |
| Outrage | Dismissed without prejudice |

**Jerry Cook**

| Federal Claims* | Disposition |
|---|---|
| First Amendment–Retaliation | Proceeds |
| Fifth Amendment | Dismissed without prejudice |
| Eighth Amendment | Dismissed with prejudice |
| Fourteenth Amendment–Substantive Due Process | Dismissed with prejudice |
| Official Capacity Claims | Dismissed without prejudice |

*Each echoing state law claim proceeds, or fails, like each federal claim.

| Stand-alone Arkansas Law Claims | Disposition |
|---|---|
| Defamation | Proceeds |
| Assault & Battery (August 13th & 22nd) | Proceeds |
| Malicious Prosecution | Proceeds |
| Abuse of Process | Dismissed with prejudice |
| Outrage | Dismissed without prejudice |

## Velva "Joy" Lingo

| Federal Claims* | Disposition |
| --- | --- |
| First Amendment– Retaliation | Proceeds |
| Fifth Amendment | Dismissed without prejudice |
| Eighth Amendment | Dismissed with prejudice |
| Fourteenth Amendment– Procedural Due Process | Proceeds |
| Fourteenth Amendment– Substantive Due Process | Dismissed with prejudice |
| Americans with Disabilities Act | Dismissed with prejudice |
| Official Capacity Claims | Dismissed without prejudice |

*Each echoing state law claim proceeds, or fails, like each federal claim.

| Stand-alone Arkansas Law Claims | Disposition |
| --- | --- |
| Defamation | Proceeds |
| Assault & Battery (August 13th & 22nd) | Proceeds |
| Malicious Prosecution | Proceeds |
| Abuse of Process | Proceeds |
| Outrage | Dismissed without prejudice |

**City of Egypt**

| Federal Claims* | Disposition |
| --- | --- |
| Fourth Amendment–<br>Policy or Custom of<br>Unconstitutional Violations | Dismissed with prejudice |
| Fourth Amendment–<br>Failure to Train or Supervise | Not pleaded;<br>Dismissed without prejudice |

*Each echoing state law claim proceeds, or fails, like each federal claim.